UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

SHREVEPORT DIVISION

| | | |
|---|---|---|
| **ZERELDA B. JACKSON** | * | **CIVIL ACTION NO.  11-1948** |
| **VERSUS** | * | **JUDGE ELIZABETH E. FOOTE** |
| **MICHAEL J. ASTRUE, COMMISSIONER, SOCIAL SECURITY ADMINISTRATION** | * | **MAG. JUDGE KAREN L. HAYES** |

<u>REPORT AND RECOMMENDATION</u>

Before the court is plaintiff's petition for review of the Commissioner's denial of social security disability benefits.  The district court referred the matter to the undersigned United States Magistrate Judge for proposed findings of fact and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and (C).  For the reasons assigned below, it is recommended that the decision of the Commissioner be **AFFIRMED**, and this matter **DISMISSED** with prejudice**.**

<u>Background & Procedural History</u>

Zerelda Jackson filed the instant applications for Title II Disability Insurance Benefits and Title XVI Supplemental Security Income payments on April 22, 2008.  (Tr. 67-73).  She alleged disability as of March 28, 2008, because of arthritis, diabetes, and high blood pressure.  (Tr.  81). Her claims were denied at the initial stage of the administrative process.  (Tr. 38-44).  Thereafter, Jackson requested and received a September 4, 2008, hearing before an Administrative Law Judge ("ALJ").  (Tr. 25-37).  However, in a June 25, 2009, written decision, the ALJ determined that Jackson was not disabled under the Act, finding at step four of the sequential evaluation process that she was able to return to her past relevant work as a sitter/companion.  (Tr. 10-20). Jackson appealed the adverse decision to the Appeals Council.  On September 7, 2011, however,

the Appeals Council denied Jackson's request for review; thus the ALJ's decision became the final decision of the Commissioner.  (Tr. 1-3).

On November 8, 2011, Jackson sought review before this court.  She alleges the following errors,

1. the ALJ's residual functional capacity assessment is not supported by substantial evidence; and

2. the ALJ incorrectly characterized her past relevant work as a sitter/companion.

### **Standard of Review**

This court's standard of review is (1) whether substantial evidence of record supports the ALJ's determination, and (2) whether the decision comports with relevant legal standards.  *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990).  Where the Commissioner's decision is supported by substantial evidence, the findings therein are conclusive and must be affirmed. *Richardson v. Perales*, 402 U.S. 389, 390 (1971).  The Commissioner's decision is not supported by substantial evidence when the decision is reached by applying improper legal standards. *Singletary v. Bowen*, 798 F.2d 818 (5th Cir. 1986).  Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  *Richardson v. Perales*, 402 U.S. at 401.  Substantial evidence lies somewhere between a scintilla and a preponderance.  *Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991).  A finding of no substantial evidence is proper when no credible medical findings or evidence support the ALJ's determination.  *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988).  The reviewing court may not reweigh the evidence, try the issues *de novo*, or substitute its judgment for that of the Commissioner.  *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994) (citation omitted).

**Determination of Disability**

Pursuant to the Social Security Act ("SSA"), individuals who contribute to the program throughout their lives are entitled to payment of insurance benefits if they suffer from a physical or mental disability. *See* 42 U.S.C. § 423(a)(1)(D). The SSA defines a disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A). Based on a claimant's age, education, and work experience, the SSA utilizes a broad definition of substantial gainful employment that is not restricted by a claimant's previous form of work or the availability of other acceptable forms of work. *See* 42 U.S.C. § 423(d)(2)(A). Furthermore, a disability may be based on the combined effect of multiple impairments which, if considered individually, would not be of the requisite severity under the SSA. *See* 20 C.F.R. § 404.1520(a)(4)(ii).

The Commissioner of the Social Security Administration has established a five-step sequential evaluation process that the agency uses to determine whether a claimant is disabled under the SSA. *See* 20 C.F.R. §§ 404.1520, 416.920. The steps are as follows,

(1) An individual who is performing substantial gainful activity will not be found disabled regardless of medical findings.

(2) An individual who does not have a "severe impairment" of the requisite duration will not be found disabled.

(3) An individual whose impairment(s) meets or equals a listed impairment in [20 C.F.R. pt. 404, subpt. P, app. 1] will be considered disabled without the consideration of vocational factors.

(4) If an individual's residual functional capacity is such that he or she can still perform past relevant work, then a finding of "not disabled" will be made.

    (5)      If an individual is unable to perform past relevant work, then other factors including age, education, past work experience, and residual functional capacity must be considered to determine whether the individual can make an adjustment to other work in the economy.

See *Boyd v. Apfel*, 239 F.3d 698, 704 -705 (5th Cir. 2001); 20 C.F.R. § 404.1520.

The claimant bears the burden of proving a disability under the first four steps of the analysis; under the fifth step, however, the Commissioner must show that the claimant is capable of performing work in the national economy and is therefore not disabled. *Bowen v. Yuckert*, 482 U.S. 137, 146 n. 5 (1987). When a finding of "disabled" or "not disabled" may be made at any step, the process is terminated. *Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir. 1990). If at any point during the five-step review the claimant is found to be disabled or not disabled, that finding is conclusive and terminates the analysis. *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

## Sequential Evaluation Process in this Case

**I.    Steps One, Two, and Three**

The ALJ determined at step one of the sequential evaluation process that Jackson had not engaged in substantial gainful activity during the relevant period. (Tr. 15). At step two, he found that she suffers severe impairments of obesity, osteoarthritis, and degenerative joint disease. *Id.*[1] He concluded, however, that the impairments were not severe enough to meet or medically equal any of the impairments listed in Appendix 1, Subpart P, Regulations No. 4, at step three of the process. (Tr. 17).

---

[1] The ALJ also determined that plaintiff's impairments of diabetes and hypertension were not severe. (Tr. 16). Once a severe impairment is determined to exist, all medically determinable impairments must be considered in the remaining steps of the sequential analysis. 20 C.F.R. § 416.923. Here, the consultative physician noted plaintiff's diabetes and hypertension, but did not assign any limitations from these impairments that were inconsistent with the ALJ's residual functional capacity assessment. *See* Tr. 159.

## II.     Residual Functional Capacity Assessment

The ALJ next determined that Jackson retains the residual functional capacity ("RFC") to perform light work,[2] including the ability to engage in occasional postural activities. (Tr. 17).

## III.    Step Four

At step four of the sequential evaluation process, the ALJ employed a vocational expert ("VE") to find that Jackson was able to return to her past relevant work as a sitter/companion, both as she actually performed the job, and as the job is generally performed in the national economy. (Tr. 19).[3] At the hearing, the VE confirmed that in the national economy, the job of companion is performed at the light exertional level, with no more than occasional postural activity. (Tr. 28-30).

## Analysis

## I.     Chronology of Relevant Medical Evidence

The medical record for the relevant period is relatively sparse. Treatment records from

---

[2] Light work entails:
> . . . lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b).

[3] Past relevant work is defined as "the actual demands of past work or 'the functional demands ... of the occupation as generally required by employers throughout the national economy.'" *Jones v. Bowen*, 829 F.2d 524, 527 (5th Cir. 1987) (citing, Social Security Ruling 82-61)

5

LSU reflect that on April 16, 2008, Jackson went to the emergency room with complaints of left shoulder pain for the preceding two weeks. (Tr. 123-124). She described her pain as constant and worse at the end of the day. *Id*. She denied arm or hand pain. *Id*. The physician diagnosed arthritis, and prescribed ibuprofen. *Id*.

A March 7, 2008, MRI of Jackson's right knee revealed degenerative changes and a tear of the medial meniscus. (Tr. 127). In January-February 2008, Jackson missed at least three consultations apparently related to diabetes education. (Tr. 130).

At the request of the state agency, Jackson underwent a June 14, 2008, physical examination administered by consultative physician, Clint Wilson, M.D. (Tr. 157-160). At the time of the examination, Jackson reported that she was unable to work because of bilateral hand pain that had worsened suddenly about two to three months earlier. *Id*. She also complained of difficulty gripping/grasping. *Id*. She described her pain as sharp and characterized it as a ten on a ten point scale. *Id*. She also reported bilateral knee pain that had started six months earlier. *Id*. She described this pain as a 10/10 also. *Id*. Dr. Wilson remarked, however, that her presentation did not match her self-described pain level. *Id*.

Upon examination, Jackson exhibited no muscle asymmetry, atrophy, or involuntary movements. *Id*. She also had no structural deformity, effusion, swelling, erythema, heat, or tenderness. *Id*. She had a normal gait, and was able to rise from a sitting position, without assistance. *Id*. However, she was unable to stand on her tiptoes, heel and tandem walk or bend and squat. *Id*. She demonstrated 5/5 grip strength with adequate fine motor movements, dexterity, and ability grasp objects bilaterally. *Id*. She had good tone, and 5/5 strength bilaterally in all muscle groups. *Id*.

Wilson diagnosed osteoarthritis, diabetes mellitus, and hypertension. *Id*. Despite her

myriad complaints, Wilson opined that Jackson should be able to sit, walk, and/or stand for a full workday as well as lift/carry object without limitation. *Id*. She also exhibited a normal range of motion in all joints. *Id*.

On July 22, 2008, non-examining agency physician, Edward Dean, M.D., reviewed the record, including Dr. Wilson's findings, and endorsed a Physical Residual Functional Capacity Assessment for work at the medium exertional level, with occasional postural limitations. (Tr. 167-174).

**II.     Discussion**

    a)     <u>RFC</u>

In his decision, the ALJ assigned significant weight to the findings of the consultative and agency physicians, Drs. Wilson and Dean. (Tr. 18-19). Although the physicians' findings supported an RFC for at least medium work, the ALJ partially credited plaintiff's complaints and reduced her RFC to the light exertional capacity, with occasional postural limitations. *Id*.

Plaintiff contends that the ALJ erred by failing to adopt Dr. Wilson's examination observation that she was unable to bend and squat. In his summation, however, Wilson did not endorse any limitation on Jackson's ability to bend or squat. In fact, Wilson noted that Jackson's reported pain levels were not congruent with her appearance at the examination. Dr. Wilson further found that plaintiff exhibited a normal range of motion in all joints, including her knees, lumbar spine, hips, and ankles. (Tr. 160). It stands to reason that if Dr. Wilson had intended to credit an inability by Jackson to bend or squat, then he would have incorporated a limitation on her ability to move these joints.[4] Furthermore, the agency physician, Dr. Dean, reviewed Dr.

---

    [4] Plaintiff related her difficulty to squat and bend to the stiffness and pain in her joints. (Tr. 93).

7

Wilson's report, including the latter's examination observation that plaintiff could not bend or squat, yet still found that Jackson was able to perform all postural activities on an occasional basis. (Tr. 169). Plaintiff herself conceded that her doctors had not told her that there were things that she should not be doing. (Tr. 31). In sum, there is ample record support for the ALJ's implicit finding that Dr. Wilson did not endorse a limitation that restricted Jackson from all bending and squatting.

In any event, even if plaintiff were unable to bend or squat, this additional limitation would not affect the ALJ's ultimate disability determination because plaintiff's past relevant work, both, as she actually performed it, and as it generally was performed in the national economy, did not require any cognizable stooping, kneeling, crouching, or crawling. *See e.g.*, Tr. 100-101 and discussion, *infra*; *see also Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988) (procedural perfection in administrative proceedings is not required); *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007) (ALJ's omission does not require remand unless it affected claimant's substantial rights).

      b)      <u>Past Relevant Work Classification</u>

Plaintiff contends that the VE incorrectly classified her past relevant work as a companion, *Dictionary of Occupational Titles* ("DOT") # 309.677-010, which does not entail stooping, crouching, or kneeling. Instead, she argues that her past relevant work should have been classified as a personal attendant, DOT # 309.674-014, which does require frequent stooping and kneeling – postural abilities that are incompatible with her assigned RFC. As noted by plaintiff, however, the job of companion, DOT # 309.677-010, contemplates aspects of the personal attendant job. Moreover, although plaintiff's past relevant work appears to have required her to move a mop bucket a few feet several times per week, she apparently managed

this task without any significant stooping, kneeling, or crouching, because when asked in her work history report how many hours per week she performed these activities, she responded "N/A." (Tr. 99-100). Thus, the exertional and non-exertional demands of plaintiff's past relevant work, as she described them, remain consistent with the job of companion, as that job is generally performed in the economy.[5] As such, the instant record reflects an adequate basis to support the ALJ's decision to defer to the expertise of the VE. *Carey v. Apfel*, 230 F.3d 131, 146 (5th Cir. 2000).

The court emphasizes that ". . . claimants should not be permitted to scan the record for implied or unexplained conflicts between the specific testimony of an expert witness and the voluminous provisions of the DOT, and then present that conflict as reversible error, when the conflict was not deemed sufficient to merit adversarial development in the administrative hearing." *Carey, supra*; *see also Barratt v. Astrue*, 2008 WL 2325636 (5th Cir. June 6, 2008) (unpubl.). Certainly, if plaintiff harbored any doubts concerning the VE's characterization of her prior work, plaintiff was obliged to emphasize the alleged inconsistency and to press the issue upon cross-examination. While an ALJ has a duty to make a sufficient inquiry into a claim, the claimant retains the burden to establish that he or she is unable to perform past relevant work. *Villa v. Sullivan*, 895 F.2d 1019, 1023 (5th Cir. 1990) (citations omitted).

## Conclusion

For the foregoing reasons, the undersigned finds that the Commissioner's determination that plaintiff was not disabled under the Social Security Act, is supported by substantial evidence and remains free of legal error. Accordingly,

---

[5] In any event, plaintiff's description of the demands of her past relevant work, as she actually performed it, do not exceed her RFC, regardless of how that past relevant work is classified.

**IT IS RECOMMENDED** that the Commissioner's decision be **AFFIRMED**, in its entirety, and that this civil action be **DISMISSED** with prejudice.

Under the provisions of 28 U.S.C. §636(b)(1)(C) and FRCP Rule 72(b), the parties have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **fourteen (14) days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND SIGNED in chambers at Monroe, Louisiana, this 2nd day of January, 2013.

KAREN L. HAYES
U. S. MAGISTRATE JUDGE